**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAGDELINE STAUBER<br><br>Plaintiff<br><br>vs.<br><br>CONOPCO, INC. D/B/A UNILEVER<br><br>Defendant | Civil Action No. 2:26-cv-8652<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

PLAINTIFF, Magdeline Stauber, residing at 4 Rouleau Lane, Shelton, CT 06484, by way of Complaint against the above-named Defendant, says as follows:

**THE PARTIES, VENUE, AND JURISDICTION**

1. Plaintiff, MAGDELINE STAUBER, (hereinafter "MS" or "Plaintiff" was an employee of Defendant Conopco, Inc. D/B/A Unilever (Hereinafter "Unilever") who had over 22 years of service to the company before her employment was terminated. Her most recent job title with Defendant was "Senior Facilities Coordinator." She is a female U.S. Citizen over the age of 50 and observant Christian, with sincerely held beliefs against abortion and human genetic modification, which are integral to her comprehensive belief system concerning deep and imponderable matters wherein she prays for the guidance and

blessing of God with respect to all decisions concerning the care for the body He gave her, and which must be returned to God upon her death without deviation from the design in which God intended for it, as she believes that God created her in His perfect image, and that her body is a Temple of the Holy Spirit. Observance of her faith therefore demands that she must maintain the sanctity of her body against the desecration, invasion and/or alteration thereof, which includes being compelled to undergo any unwanted medical procedure or receive any vaccine, injection or immunization which would introduce substances or insert items into her body that she believes to be unholy, or otherwise would alter it or any part thereof from God's intended design. She believes that life is sacred, begins at conception, that God did not make any mistakes when He created any life on Earth, and that humanity substituting its own judgment for God's on matters of God's Creation is blasphemy.

2. Plaintiff maintains a faith-based objection to the use of aborted fetal cell lines, genetically modified and/or artificially preserved or "immortalized" human cell lines, adenoviral vector technology, mRNA genetic modification or "gene therapy" technology, and spike protein technology in the process of developing any vaccines, medications and/or immunizing agents, regardless of whether the foregoing are actual ingredients or components in the products themselves or were merely used in their research, development and/or confirmatory lab testing, as anathema to her beliefs in the holiness and perfection of God's Creation and divine providence, and considers using any product produced with those elements, methods and functionality to be a grievous sin. [1] The

---

[1] Plaintiff cites to the Bible verses and religious texts 1 Corinthians 3:16-17, 1 Corinthians 6:19-20, Genesis 1:24 and 1:28, Exodus 15:26 and 20:13, Leviticus 5:2, Numbers 6:24-26, Deuteronomy 32:39, Psalm 139:13-16, Jeremiah 1:4-5, Psalm 103:3-5, Psalm 127:3-5, Matthew 6:24, Luke 16:13, Proverbs 6:16-19, John 3:16, Romans 14:5 and

foregoing are integral to Plaintiff's comprehensive religious belief system concerning fundamental and imponderable matters of good and evil, right and wrong, life and death, and humanity and God, and are evidenced by formal and/or external signs.

3. Defendant, Conopco, Inc. d/b/a Unilever, with its U.S. headquarters located at 800 Sylvan Ave., Englewood Cliffs, NJ 07632, holds itself out to the public as a global producer of various food, pharmaceutical, cosmetic, hygienic, and other commercial and household products. It is responsible for Plaintiff's damages claimed herein.

4. This Court has subject matter jurisdiction over Plaintiff's claims arising out of the Civil Rights Act pursuant to 28 U.S.C. §1331 "federal question jurisdiction" as well as diversity of citizenship under 28 U.S.C. § 1332 due to Plaintiff's location in the State of Connecticut and Defendant's in the State of New Jersey, and the amount in controversy of this action exceeding $75,000.00, and has supplemental jurisdiction over Plaintiff's claims based on Connecticut State Law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United State District Court, District of New Jersey by virtue of the location of Defendant.

## ALLEGATIONS OF FACT

6. Plaintiff was employed by Defendant in its Trumbull, Connecticut office since 1999. As of March 14, 2020, at the inception of the COVID-19 pandemic, Plaintiff was transitioned to working remotely from her home and was not required to come to the Defendant's office in connection with her employment. At all relevant times to this action, Plaintiff maintains that she was an exemplary employee of Unilever and was

---

14:12, Psalm 22:10, Psalm 106:37-38 and Revelation 18:23.and #1800 as representative of her underlying religious beliefs relevant to this action that conflicted with her former employer's vaccine mandate.

recognized as such by the company for her performance throughout her tenure of employment.

7. On or about November 11, 2021, Defendant announced its mandate that its employees located in the State of Connecticut, including Plaintiff, must become vaccinated for COVID-19 as a condition of their continued employment, and if they were not so vaccinated by December 21, 2021, their employment would be terminated effective February 15, 2022, without payment of severance. Defendant invited employees who objected to being vaccinated for COVID-19 to submit requests for an accommodation to its Human Resources department by November 29, 2021.

8. On information and belief, at that time, Defendant was planning a reduction in its workforce for 2022 in order to cut its costs.

9. Plaintiff thereafter informed Defendant's Human Resources department that she wished to request a religious accommodation from this requirement and followed Defendant's instructions on how to do so. Plaintiff informed Defendant that her sincerely held religious beliefs conflicted with its requirement that she receive a COVID-19 vaccine product and requested a reasonable accommodation from said requirement.

10. However, on December 21, 2021, the same day Defendant previously advised its employees that their employment would be terminated if they were not vaccinated for COVID-19, Defendant informed Plaintiff via the enclosed email that after "serious consideration," her religious accommodation request was denied on the basis of alleged "undue hardship." Again, Defendant did not indicate any dispute concerning the sincerity of Plaintiff's religious beliefs for which she sought accommodation (in fact, Defendant acknowledges that Plaintiff "may hold sincere beliefs"), however, on information and

belief, it pressured Plaintiff to violate her religious beliefs in order to retain her employment, inviting her to contact its Chief Medical Officer, Dr. Blythe Mansfield, regarding "all the information needed about the safety and efficacy of the COVID-19 vaccine" and extended the time for her to become "fully vaccinated" until February 15, 2022. On information and belief, Defendant further advised that if Plaintiff's "final decision is to remain unvaccinated" her "transition period" begins "December 22, 2021 and ends February 15, 2022" during which time she is "considered an active employee with no changes to your current role, benefits or compensation . . .[a]t the end of the transition, you will be considered a voluntary resignation, which is not a severance eligible event."

11. Defendant, through various channels, thereafter pressured Plaintiff to violate her religious beliefs and "just get the vaccine" to retain her employment, as it had done on numerous occasions since announcing its vaccine mandate. Plaintiff was constantly bombarded with emails and other communications from Unilever's management, EHE Health, and leadership teams pressuring her to get vaccinated, invitations to virtual Town Hall meetings wherein employees were pressured to be vaccinated, and statistics and data from various public health organizations regarding the purported safety and efficacy of COVID-19 vaccines. This had the effect of creating a culture of fear throughout the company about the symptoms, effects and possible hospitalization or death if COVID-19 was contracted, and fear of the transmission of COVID-19 to family members and/or co-workers, particularly by unvaccinated employees, thus causing Plaintiff to become stigmatized within the company. Additionally, on information and belief, Defendant enforced visual identifiers such as purple lanyards, social distancing and mask

requirements to identify those employees and consultants who were not vaccinated. During corporate Town Hall meetings, an environment of hostility against unvaccinated employees was palpable, with hostile and harassing comments in Town Hall Chats and virtual meetings against unvaccinated employees, hostile and harassing comments from managers, and Human Resources and U.S. Leadership Team creating duress with threat of loss of employment for those who are not vaccinated.

12. On information and belief, Defendant also denied similar requests for religious accommodations from its COVID-19 vaccination requirements from approximately fifteen (15) other employees assigned to its Trumbull, CT office, whom were also working remotely, with no apparent justification.

13. On January 22, 2022, Defendant announced internally and publicly that it would reduce its workforce by eliminating approximately 1500 employees.

14. Thereafter, on January 24, 2022, Defendant announced to its unvaccinated employees that their termination date was extended to March 31, 2022, from February 15, 2022, and that those terminated on March 31, 2022 for being unvaccinated would receive no severance pay or payout of their accrued paid time off (PTO) upon separation in a divergence from typical company policy as they would have been deemed to have "voluntarily resigned."

15. On February 20, 2022, Plaintiff became aware that Defendant posted an opening for her position online. As per the attached job posting, no reference to any COVID-19 vaccine requirement was indicated.

16. On March 31, 2022, Plaintiff's employment with Defendant was terminated by Defendant, which Plaintiff maintains was completely involuntary in nature and not a voluntary resignation.

17. Based on the foregoing, it became evident to Plaintiff that Defendant's "accommodation review process" was essentially a sham, as Defendant had no intention of taking any information provided by Plaintiff into consideration for the purposes of determining whether it could approve the requested accommodation – it had already made the decision that said requests would be denied. Moreover, it did not require its Canadian workers, nor its U.S. "Supply Chain" workers to be vaccinated for COVID-19 as a continued condition of their employment. It appears that Unilever's vaccine mandate was a means to an end of creating a pretext under which Unilever could utilize to decide which employees it would cull from its ranks in its planned layoffs – older employees (50+) who worked in office roles with sincerely-held religious beliefs against vaccination, which it would theoretically replace with younger, more compliant, and less expensive employees. Additionally, on information and belief, Defendant did not impose any vaccine, masking or social distancing requirements for gatherings outside of the office (happy hours, holiday party, etc.), and had no vaccine mandate in its U.S. or Canadian production plants. Therefore, it is apparent that the company's vaccine mandate was not about "health and safety," but about "compliance" and creating a pretext for it to decide who would stay and who would go, imposing a "litmus test" to eliminate those employees from its ranks who expressed a religious belief against COVID-19 vaccination, as a means to avoid paying severance or other financial benefits, in advance of a planned layoff.

18. On information and belief, just 6 months later, in October of 2022, Defendant discontinued its employee COVID-19 vaccine mandate.
19. Instead of discharging its obligations under law with respect to Plaintiff's request to engage in an interactive process concerning her religious accommodation request, Defendants instead terminated Plaintiff's employment. Moreover, Defendant did not offer Plaintiff reinstatement to her prior position of employment following the termination of its COVID-19 vaccine mandate.
20. On information and belief, at or around the time Defendant denied Plaintiff's religious accommodation request and thereafter terminated her employment, the "Omicron" variant strain of COVID-19 was the predominant variant strain of COVID-19 present in the United States and New Jersey, essentially replacing all previously prevalent variant strains of the virus.
21. On information and belief, information was publicly available to Defendant at that time indicating that the existing COVID-19 vaccine products available to the public at that time were not effective in preventing transmission or infection of the Omicron variant.
22. In fact, on January 10, 2022, Albert Bourla, the CEO of Pfizer, the manufacturer of the only COVID-19 vaccine product to have received full FDA approval at the time, openly admitted in an interview with Yahoo Finance[2] that two doses of its (then) current COVID-19 vaccine provided "very little protection, if any" against the Omicron strain.
23. Upon information and belief, Defendant treated Plaintiff differently from other individuals who requested accommodations from its COVID-19 vaccination requirements, and it permitted others who worked for it to continue working

[2] Available at https://youtu.be/lhMbKyDq9_w

unvaccinated under said religious accommodations despite its claims to Plaintiff regarding "undue hardship."

24. Upon information and belief, Defendant could have accommodated Plaintiff's sincerely held religious beliefs which prohibited her from partaking in the use of a COVID-19 vaccine product without substantial increased burden(s) and/or cost(s) in relation to the context and operation of its particular business[3], especially in light of the fact that the COVID-19 vaccine products available to the public at the time did not actually prevent transmission or infection of COVID-19, but it refused to do so. It is of note that Plaintiff had been working remotely since March of 2020 and performed all responsibilities of her employment to Defendant's satisfaction, and Defendant terminated its own COVID-19 vaccine mandate in October of 2022, just 6 months after Plaintiff's employment was terminated on the purported basis of her failure to comply with same.

25. Defendant had since rescinded its employee COVID-19 vaccination mandate approximately 6 months after Plaintiff's termination, and same is no longer in force or effect at this time. Despite it having done so, and having the opportunity to both mitigate Plaintiff's financial damages and ameliorate its acts of discrimination by offering Plaintiff reinstatement to her former position, Defendant has refused to do so.

26. On information and belief, Plaintiff and/or its executive leadership and equity owners stood to gain considerable economic advantage by virtue of having a workforce that was as close to 100% vaccinated for COVID-19 as possible, and its personnel responsible for reviewing religious and/or medical accommodation requests were therefore directed to deny as many requests for religious or medical accommodations from its employees as possible. On information and belief, this is further evidenced by Defendant having

[3] *See* Groff v. DeJoy (No. 22-174, June 29, 2023).

provided its “fully vaccinated” employees who it permitted access to their premises a purple lanyard to wear, visually identifying them for all present as “fully vaccinated” and granting them special privileges of exempting those employees from its face masking and social distancing requirements, having the necessary effect of creating a culture where those who were unvaccinated on the basis of their religious beliefs and/or medical reasons were relegated to “second class” status. Defendant repeatedly bombarded its employees with messaging encouraging them to be vaccinated for COVID-19, even those it knew or should have known could not be on the basis of their religion and medical condition, including Plaintiff. Every action taken by Defendant during this time was calculated for the purpose to eliminate those employees from its ranks who maintained religious beliefs against vaccination, or whom were otherwise unable to be vaccinated for medical reasons, creating a hostile work environment wherein those employees would either resign, be “deemed to have resigned,” or be terminated.

27. Additionally, at the time Defendant made its decision to deny Plaintiff’s request for a religious accommodation which ultimately led to the termination of her employment, Plaintiff, who was over 50 years old, was approximately 1 year away from retirement. In addition to her income, Plaintiff lost her retirement benefits, medical benefits, and PTO payout that she would have received had the company not terminated her employment in the manner in which it did.

28. As a result of Defendants’ discriminatory and retaliatory actions, Plaintiff has been damaged financially by the loss of her employment and loss of future earning potential, and has suffered the emotional distress having been marginalized as a result of her

sincerely held religious beliefs. Plaintiff has made a good faith effort to mitigate her damages, but to date, has not been able to d oso.

29. Plaintiff initially submitted a Charge of Discrimination to the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the EEOC on or about April 27, 2022, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 and discriminated against her on the basis of her religion, and thereafter amended her Complaint with the CHRO on February 1, 2023 to add an additional charge of discrimination on the basis of age. The EEOC issued a Notice of Right to Sue dated August 30, 2022, however, for reasons unbeknownst to Plaintiff, she never received it via email, electronic notice, or regular mail at that time, and did not receive it until April 16, 2026 after it was mailed to her by the EEOC's Boston Area Office on April 14, 2026 (see attached). Thereafter, the Connecticut Commission on Human Rights and Opportunities issued the attached Release of Jurisdiction on April 22, 2026 with respect to Plaintiff's Connecticut State Law claims of employment discrimination based on age and religion. The instant action is commenced within the applicable 90 day time period based on Plaintiff's receipt of both notices.

**COUNT ONE – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

30. Plaintiff repeats and re-alleges all previous allegations of the Complaint as if fully set forth herein.

31. It is undisputed that Plaintiff was more than qualified to perform all requirements of her position as evidenced by her over 22 years of service to the Defendant business organization, and that she has sincerely held religious beliefs contravening her use of products whose creation and/or functionality is supported by abortion and/or human

genetic modification, such as the COVID-19 vaccine products available to the public at all times relevant to this action, which are integral to her comprehensive religious belief system concerning deep and imponderable matters, and that Plaintiff communicated the nature of those beliefs to Defendant, placing Defendant on notice on more than one occasion that she required a religious accommodation from its conflicting requirement that she utilize a COVID-19 vaccine product in accordance with law.[4]

32. On information and belief, Defendant could have accommodated Plaintiff's religious accommodation requests without "undue hardship" to its business operations in accordance with the standard set forth by the U.S. Supreme Court in Groff v. DeJoy, which is retroactive in its application to the instant matter, but it refused to do so. Not only did it deny her initial request and request for reconsideration without justification, it repeatedly pressured her into violating her beliefs by partaking in the use of a vaccine product which it knew or should have known was forbidden by virtue of Plaintiff's religious observance.

33. Defendant treated Plaintiff differently from its other employees based upon the nature of her religious belief ultimately terminating her employment on the basis of her religion, and further denied her payment of severance, PTO, retirement benefits, and other benefits it typically gives to employees separating from the company involuntarily for non-performance or misconduct related reasons.

34. The above-described actions of Defendant constitute unlawful employment discrimination against Plaintiff based upon her sincerely-held religious beliefs including, but not limited to, Defendant's failure to engage in a proper "interactive process" with

[4] *See* EEOC v. Abercrombie & Fitch Stores, 575 U.S. 768 (2015): HELD: There is no requirement that an employee actually submit a formalized request for a religious accommodation in order to avail themselves of the protection of Title VII of the Civil Rights Act of 1964.

Plaintiff with respect to the feasibility of providing her with the requested religious accommodation, repeatedly pressuring Plaintiff into abandoning her religious beliefs by receiving a vaccine which is forbidden by her religious observance as a condition of keeping her job and income, and subjecting Plaintiff to a hostile work environment causing her to feel her worth as an employee and human being was denigrated and marginalized as a result of her having expressed a sincerely held religious belief against engaging in the use of the product required by her employer, and ultimately, terminating her employment, whereas Defendant had apparently accommodated other employees' requests for religious exemptions from its COVID-19 vaccination policies and/or otherwise did not require them to be vaccinated for COVID-19 at all, thus treating Plaintiff differently than those employees, failing to accommodate her sincerely held religious beliefs despite there being no basis in law or in fact to justify its denial of her accommodation request, and ultimately terminating her employment and denying her severance and other compensation she otherwise should have received under the circumstances.

35. Defendant has therefore unlawfully discriminated against Plaintiff on the basis of her religion in connection with her employment in contravention of 42 U.S.C. § 2000e *et seq*, commonly known as Title VII of the Civil Rights Act of 1964, in violation of Plaintiff's civil rights, under the legal theories of "failure to accommodate," "hostile work environment," "discriminatory discharge," "quid pro quo[5]" and "disparate treatment."

[5] Quid pro quo discrimination may arise in the contest of a disparate treatment of failure to accommodate claim when an employee is "required or coerced to abandon, alter or adopt a religious practice as a condition of employment." Here, Defendant attempted to pressure plaintiff into abandoning or otherwise acting inconsistently with her sincerely held religious beliefs by partaking in the use of a vaccine product which was prohibited by her sincerely held religious beliefs in order to maintain her employment, and terminated said employment when shre refused to do so. *See* Questions and Answers: Religious Discrimination in the Workplace, EEOC Guidance dated 7-

36. On June 29, 2023, the U.S. Supreme Court ruled in the matter of Groff v. DeJoy that an employer "**must** reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations" (emphasis added) and that said requests may only be rejected when it would be "unjustifiable" for an employer to do so based the presentation of a "substantial" burden in the overall context of an employer's business, and that said ruling was retroactive in its application as it represented a clarification of the correct legal standard to be applied to religious discrimination cases over the past approximately fifty (50) years.

37. Based on the facts and circumstances alleged herein and evidence to be presented, on information and belief, no circumstances were present at all times relevant to this action which would tend to demonstrate any justification for Defendant to have asserted the existence of any "undue hardship" so as to justify Defendant's denial of Plaintiff's religious accommodation request, and/or the subsequent termination of her employment pursuant to the standard as defined and clarified in Groff v. DeJoy, which is retroactive in its application. Defendant's actions in terminating Plaintiff's employment – and then non-selecting her for re-hire following the recission of its vaccine mandate shortly thereafter, which it purports was the sole reason her employment ended- are thereby prohibited by law. On information and belief, Plaintiff was treated differently by Defendants than other employees who were not vaccinated for COVID-19, and it could have accommodated her sincerely held religious beliefs without any substantial impact upon its operations, yet it refused to do so, and instead wrongfully terminated her employment in retaliation for her

22-2008, available at: https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace

having submitted a religious accommodation request, on the basis of her religious beliefs and the free exercise thereof, and then non-selected her for re-hire, apparently for the same reasons.

38. As a direct and proximate result of the above-described actions of the Defendants, whom on information and belief all participated in the underlying acts of employment discrimination in this matter, Plaintiff was the victim of unlawful employment discrimination, and has been damaged.

39. Plaintiff has complied with the requirements of law to obtain a Notice of Right to Sue from the EEOC in order to assert a private cause of action under that Act, and the instant action was commenced within the applicable time period to do so based on her date of receipt of same on April 16, 2026, even though same was dated August 30, 2022.

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory, statutory, exemplary and/or punitive monetary damages in an amount to be determined at time of trial pursuant to 42 U.S.C. § 2000e *et seq*, together with an award of his counsel fees, pre-judgment interest accruing to the date of entry of judgment, costs of suit, and such other relief the Court deems equitable and just.

**COUNT TWO – VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT ("CFEPA") CONN. GEN. STAT. § 46a-60 Et. Seq.**

38. Plaintiff repeats and re-alleges all allegations of the Complaint as if fully set forth herein.

39. All of the above alleged violations of Title VII of the Civil Rights Act as set forth in Count I also constitute unlawful employment discrimination pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 Et. Seq. on the basis of

religion. Additionally, on information and belief, as set forth above by what was known to Plaintiff about the Defendant business organization's true intentions to cut costs, Plaintiff, who was just one year from retirement at the time her employment was terminated, was unlawfully discriminated against by Defendant on the basis of her age being over 50.

40. As a direct and proximate result of same, Plaintiff have been damaged as set forth above.

41. The CCHRO recognized Plaintiff's complaints of discrimination based on both religion and age when it granted reconsideration to its dismissal of Plaintiff's claims on May 9, 2025, and subsequently released jurisdiction and granted Plaintiff the right to sue under Connecticut State Law on April 22, 2026. The instant action is commenced within the time provided by Connecticut State Law.

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory, statutory, exemplary and/or punitive monetary damages in an amount to be determined at time of trial pursuant to 42 U.S.C. § 2000e *et seq* and Conn. Gen. Stat. § 46a-60 Et. Seq and as otherwise provided by law, together with an award of his counsel fees, pre-judgment interest accruing to the date of entry of judgment, costs of suit, and such other relief the Court deems equitable and just.

**COUNT THREE – UNJUST ENRICHMENT**

42. Plaintiff repeats and re-alleges all allegations of the Complaint as if fully set forth herein.

43. Defendant's conduct in terminating Plaintiff rather than compensating her appropriately for the work she performed as described above, including, but not limited to denying her severance pay and other benefits offered to other employees who typically separated from the company under circumstances not related to performance and/or misconduct in accordance with its normal practices, has caused Defendants to become unjustly enriched, and said profits must be disgorged as a matter of law and equity.

44. As a direct and proximate result of same, Plaintiff have been damaged.

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory, statutory, exemplary and/or punitive monetary damages in an amount to be determined at time of trial pursuant to 42 U.S.C. § 2000e *et seq* and Conn. Gen. Stat. § 46a-60 Et. Seq and as otherwise provided by law, together with an award of his counsel fees, pre-judgment interest accruing to the date of entry of judgment, costs of suit, and such other relief the Court deems equitable and just.

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory, statutory, exemplary and/or punitive monetary damages in an amount to be determined at time of trial pursuant to 42 U.S.C. § 2000e *et seq* and Conn. Gen. Stat. § 46a-60 Et. Seq and as otherwise provided by law, together with an award of her counsel fees, pre-judgment interest accruing to the date of entry of judgment, costs of suit, and such other relief the Court deems equitable and just.

Date: July 13, 2026

Respectfully submitted,

/s/ Daryl Kipnis (SBN 023812006)
daryl@kipnislawoffices.com
KIPNIS LAW OFFICES
125 Half Mile Road, Suite 200
Red Bank, NJ 07701
Telephone: (732) 595-5298
Fax: (732) 412-7925
Attorney for Plaintiff

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury on all issues so triable pursuant to FRCP 38

Date: July 13, 2026

Respectfully submitted,

/s/ Daryl Kipnis (SBN 023812006)
daryl@kipnislawoffices.com
KIPNIS LAW OFFICES
125 Half Mile Road, Suite 200
Red Bank, NJ 07701
Telephone: (732) 595-5298
Fax: (732) 412-7925
Attorney for Plaintiff

Subject: FW: Accommodation Request Determination Notification

**Stauber, Maggie <Maggie.Stauber@unilever.com>** Jan 7, 2022, 9:15 PM

to mrsmrp68@gmail.com

**From:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Sent:** Friday, January 07, 2022 2:41 PM
**To:** Stauber, Maggie <Maggie.Stauber@unilever.com>; Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Hi Maggie,

You are scheduled to meet with Arleen Alessie, Director HR M&A, on Monday, 10, 2022 to discuss your concerns, ask any questions you may have, and review next steps.

Best,

The COVID Vaccine Accommodation Team

**From:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Sent:** Friday, January 7, 2022 2:38 PM
**To:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>

**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

If the decision to deny my exemption was based on my job duties, my job duties do not require interactions, especially not with customers and third parties. I handle all NA R&D contracts and they are all done through TEAMS meetings. I have successfully exceeded all my goals the past 2 years working remotely. This ultimately proves no interactions are required of my position. If you are saying the information I provided in the request was enough to make a decision, and did not require further info, then you are stating that you are disregarding my Religious belief. I have worked at Unilever for 22 years with my religious beliefs. Unilever accepted me for employment with my religious belief. I have been working remotely for 2 years with my religious beliefs. How does Unilever now just dismiss my religious belief. So your response translates to - the decision was based solely on the fact that I am unvaccinated – certainly not on my deeply held religious beliefs.

The accommodation team does not know me personally. The review group who participated in the final decision does not know me personally, are denying my beliefs, and are making decisions about my job and my future. Additionally you also stated in your original notification that this is considered a voluntary resignation. I am **not** resigning. This is religious discrimination. If an employees proposed accommodation would pose an undue hardship, the employer should explore alternative accommodations. Denying my accommodation violates Title 7 of the Civil Rights Act of 1964. This title protects workers from employment discrimination based on their race, color, religion, sex including sexual orientation and transgender status. Unilever employs all of these traits and characteristics. Unilever also prides itself on Diversity & Inclusion. We spend more time on surveys and learnings for D&I and yet Unilever dismisses my Religion/belief. Under Title 7, an employer is prohibited from discriminating because of religion in hiring, promotion, discharge, compensation, or other terms (conditions or privileges of employment) It also cannot limit, segregate or classify applicants or employees based on Religion "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his/her status as an employee.

If my accommodation causes undue hardship Unilever should offer me a reasonable accommodation that does not pose an undue hardship.

Am I going to be provided the opportunity for an appeal with HR? I would like an answer to that question.

Sincerely,

Maggie Stauber

**From:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Sent:** Friday, January 07, 2022 1:04 PM
**To:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Cc:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Hi Maggie,

As provided in your determination notification, the COVID-19 Vaccine Accommodation Team carefully reviewed everything that you submitted as well as various other factors including but not limited to your function and job duties at Unilever, and the health and safety risk posed to Unilever's employees, customers, work sites, and third parties. Your submission went through multiple levels of review before a determination was made.

The COVID-19 Vaccine Accommodation Team provided you with the opportunity to share the information you felt was necessary for us to evaluate your accommodation request on the accommodation request form. If we did not reach out for additional information, the information you provided was sufficient to make a determination.

You will have the opportunity to discuss your questions live with an HR Representative in the week ahead. We recognize that whether you decide to get vaccinated and where you choose to work is a personal choice, and we will respect your final decision.

Best,

The COVID-19 Vaccine Accommodation Team

**From:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Sent:** Friday, January 7, 2022 12:06 PM
**To:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Why is Unilever and the Accommodation Team not being transparent? I have asked multiple questions, multiple times, and each time the only response is to talk to HR. This is unacceptable. HR did not make this decision. The Accommodation Team made this decision and therefore should be held accountable for their response and also provide a reply to my questions. You stated in your original response below:

The accommodation team made a decision and as an employee I have the right to ask on what basis this decision was established. The accommodation Request Form submitted on 11/29/2021 clearly asked "if documentation is required to support your belief are you willing to provide" – My answer was YES. The accommodation team **did not** reach out to me nor ask for further information to support my accommodation so how was the Denial finalized?

What accommodations and protocols are being offered and put in place to those unvaccinated employees who have an approved exemption.

I have been a well-respected employee of 22 years and I would appreciate a direct response from the Accommodation Team.

Sincerely,

Maggie

**From:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Sent:** Thursday, January 06, 2022 9:24 PM
**To:** Stauber, Maggie <Maggie.Stauber@unilever.com>; Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Hi Maggie,

You will be receiving a meeting invitation from a Human Resources representative. Meetings will be scheduled for the week of January 10, 2022.

Thanks!

The COVID Vaccine Accommodation Team

**From:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Sent:** Thursday, January 6, 2022 4:52 PM
**To:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** Accommodation Request Determination Notification
**Sensitivity:** Confidential

Hello and Happy New Year.

I am still waiting on a response to my questions. You initial email on 12/21 stated if I had any questions or concerns to the determination to please submit my questions to this email. My questions/concerns were emailed on 12/21 and again on 12/28 but have not yet been answered.

Please provide answers as requested.

Thank you,

Maggie

**From:** Stauber, Maggie
**Sent:** Tuesday, December 28, 2021 4:14 PM

**To:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Thank you for you response. But my questions were not answered. Can you please answer the following:

- Who made the decision to deny my Religious Exemption and disregard my religious belief and faith.
- On what basis or fact was the decision of undue hardship made upon? That was not defined in the response. If exemptions are being approved for other unvaccinated employees wouldn't their presence on site also cause undue hardship? This is discrimination.
- Why wasn't I provided the opportunity to have an interactive discussion when my exemption was received or during the exemption review. There was no additional information requested. It took 3 weeks for me to get a response of Denied. Why was there no dialogue previous to the decision? Only an arbitrary decision?
- What is the process for an appeal?

Thank you,

Maggie

**From:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Sent:** Wednesday, December 22, 2021 1:52 PM
**To:** Stauber, Maggie <Maggie.Stauber@unilever.com>; Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Hi Maggie,

Thank you for reaching out. We recognize and understand that this is not the decision you had hoped to receive. In the new year, you will have the opportunity to meet with a Human

Resources representative to discuss your concerns, ask any questions you may have, and review next steps.

Thank you,

The COVID Vaccine Accommodation Team

**From:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Sent:** Tuesday, December 21, 2021 6:39 PM
**To:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Subject:** RE: Accommodation Request Determination Notification
**Sensitivity:** Confidential

Thank you for your response. I am unsure what undue hardship means? Can you please expand on that. If undue hardship applies to other parties, the science has already proven that fully vaccinated and boosted individuals are still contracting and transmitting the virus to others. Therefore unvaccinated individuals should not pose a risk to vaccinated individuals, which concludes no undue hardship imposed to Unilever or other employees. Additionally, for those individuals who do receive an approved accommodation wont they be creating undue hardship? Why are the unvaccinated being discriminated? The accommodations should all be consistent – either all accepted or all denied. How do you justify I would create undue hardship when you are allowing other unvaccinated employees on site (whether Religious or Medical reason)? This is very contradictory & inconsistent and is a legitimate and legal argument. I have been remote since the start of COVID and have fully exceeded all my goals. My job function and job duties do not require F2F interactions with customers and third parties. I have successfully executed all NA R&D legal contracts through TEAMS meetings with no hinderances. Actually working from home without constant distraction from the office has allowed me to work in a better capacity as legal contracts need a quiet space for analysis given the scale and importance of each document. I have also supported all 3 of my Directors successfully from home and have also supported the Site Operations team remotely with no obstacles or interruptions to schedules. My Director can verify this information. As such I would like to have my accommodation reconsidered.

I am deeply disappointed that Unilever has not respected my true beliefs/faith or the fact that I have never taken any medication, nor a flu shot, nor an Aspirin and will not

compromise my healthy immune system. I follow a Homeopathy lifestyle. These are my strong beliefs. I am even more disheartened that I was not offered an alternative such as weekly COVID-19 testing/masking or moving to a private workspace or even remote work. Especially since we are moving to a Hybrid model in 2022 and we will not be expected in the office 5 days as we were pre-COVID. Unilever is constantly promoting how they truly care about their employees. This action proves Unilever does not exercise their best practices. Understanding an individual's way of life and offering a solicitous alternative would have been much more acceptable based on what Unilever advocates. I have almost 22 years of dedicated service to Unilever. I worked around the clock and weekends with my Site Director and Safety Director during the onset of COVID to get our Trumbull site fully operational with Protocols and Safety Measures set in place so that Essential Employees could safely work in the Lab. I did not get paid for any of my overtime for that full year from March 2020 – midsummer 2021. I am dedicated to Unilever and the safety of the employees for the TR Site. My contributions to successfully engage and create Protocols for COVID-19 was all done remotely. My impact to the positive outcome of re-opening the TR site obviously is not being recognized or valued.

As we are all aware the vaccine mandates are currently under review by the courts and pushed out to sometime in 2022. The vaccine rules status lands in the Supreme court of the United States and has not yet issued any new guidance following the past court hearing.

I do not want to separate from Unilever. My 22 years have been amazing. I have learned so much throughout the years and have met so many wonderful, smart, inspiring colleagues along the way. They are like family. Working at Unilever allows me to follow my purpose.

I would appreciate your reconsideration of my Religious Exemption at this time.

Thank you.

Maggie

**From:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>
**Sent:** Tuesday, December 21, 2021 10:35 AM
**To:** Stauber, Maggie <Maggie.Stauber@unilever.com>
**Cc:** Accommodations, CovidVaccine <CovidVaccine.Accommodations@unilever.com>

**Subject:** Accommodation Request Determination Notification
**Sensitivity:** Confidential

Dear Maggie:

Thank you for taking the time to submit your request for a religious accommodation.

The COVID-19 Vaccine Accommodation Team has carefully reviewed your submission, including your function and job duties at Unilever, and the health and safety risk posed to Unilever's employees, customers, work sites, and third parties. After serious consideration, your request has been denied. While we acknowledge that you may hold sincere beliefs, the Company is unable to offer you an accommodation as it would create an undue hardship.

We recognize that whether you decide to get vaccinated and where you choose to work is a personal choice, and we will respect your final decision.

To ensure you have all the information needed about the safety and efficacy of the COVID-19 vaccine, Dr. Blythe Mansfield, Chief Medical Officer and her team are available for questions and can be contacted at covid19.na@unilever.com

If your final decision is to remain unvaccinated, your transition period begins December 22, 2021 and ends February 15, 2022. During this transition period, you are considered an active employee with no changes to your current role, benefits or compensation. At end of the transition, you will be considered a voluntary resignation, which is not a severance eligible event.

If you are currently considered to be an "Essential Role" and are regularly working in a Unilever location and choose not to get vaccinated, as of January 4, 2022, you will no longer have access to our sites or be eligible for business travel.

At this time, there is no additional action, however in the new year, you will be invited to a meeting with Human Resources to review next steps. During this meeting, you will need to confirm whether you plan on becoming fully vaccinated prior to February 15, 2022 so the Company can put a plan in place to transition your work and fill your role if necessary.

If you choose to get vaccinated, you must be fully vaccinated by February 15, 2022. You will only be considered fully vaccinated for COVID-19 two weeks after you have received the second dose of either the Pfizer or Moderna vaccine or two weeks after you have received a single dose vaccine of J&J/Janssen. If boosters are added to the definition of fully vaccinated, you will be informed of any additional requirements.

Again, we recognize you have choices to make and no matter your decision, we are committed to assisting you as you make your final decision. If you have any questions concerning this determination, you may submit your questions to COVIDvaccine.accommodations@unilever.com.

Best,

The COVID-19 Vaccine Accommodation Team

IMPORTANT NOTICE: This email and any attachments may contain information that is confidential and privileged. It is intended to be received only by persons entitled to receive the information. If you are not the intended recipient, please delete it from your system and notify the sender. You should not copy it or use it for any purpose nor disclose or distribute its contents to any other person.

# EEOC (Inquiry) Number: 523-2023-00957

## Inquiry Information

### INQUIRY OFFICE

**Receiving:** Boston Area Office

**Accountable:** Boston Area Office

### POTENTIAL CHARGING PARTY

**Name:** Mrs. Maggie R. Stauber

**Address:** 4 Rouleau Lane
SHELTON, CT 06484

**Year of Birth:** 1968

**Email Address:** [redacted]

**Phone Number:** [redacted]

### POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** F

**Disabled?** I do not have a disability

**Are you Hispanic or Latino?**

**Ethnicity:** White,

**National Origin:** American(U.S.)

### RESPONDENT/Employer

**Organization Name:** Unilever

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Address:** 800 SYLVAN AVE
ENGLEWOOD CLIFFS, NJ 07632

**County:**

**Phone Number:**

### LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Address:** 40 Merritt Boulevard

TRUMBULL, CT 06611

**County:**

## RESPONDENT CONTACT

**Name:** Unilever

**Email Address:**

**Phone Number:**

**Title:**

## REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 03/31/2022

**Reason for Complaint:** Age - I am 40 years of age or older, Religion

**Pay Disparity:**

**Location of Incident:** Connecticut

**Submission (initial inquiry) Date** 01/13/2023

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:**

**Charge Number:** 523-2023-00957

**Claim previously filed as complaint with another Agency?** No

**Agency Name:**

**Approximate Date of Filing:**

**Nature of Complaint:**

## Adverse Action(s)

The company used my age to terminate my position, March 31, 2022, as part of a re-organization that took place June , 2022. I was over age 50 with 22+ years of employment. I was 1 year from retirement. I lost all my retirement benefits, medical, and 5 weeks vacation._

## APPOINTMENT

**Appointment Date and time:**

**Interview Type:** _

## APPROXIMATE DEADLINE FOR FILING A CHARGE: 01/25/2023

# Supplemental Information

## What Reason(s) were you given for the action taken against you?

My company, Unilever, put a vaccine policy in place effective Nov 11, 2021. Previous to the Policy, Unilever circulated a Mandatory questionnaire in October 2021 to all employees. Most questions we had to answer were about vaccination. One particular question asked was whether we would take the vaccine, still need to get the second shot, think about it, or definitely not take it. I believe at this time they were already in the process of planning headcount reduction for early 2022 and from the results of the questionnaire they knew who wasn't going to take the vaccine and they incorporated those findings into the headcount reduction. And they penalized the unvaccinated employees by not giving them severance, most were over 50 and 20+ years at the company. Unilever stated if you were not vaccinated by Dec 21, 2021 you would be terminated effective Feb,15, 2022. Effective January 22, 2022, the company announces, internally and publicly, that there will be 1500 job reductions. Two days following, January 24, 2022, Unilever announced the new termination date for unvaccinated employees will now be March 31, 2022 instead of Feb 15, 2022. Those terminated on March 31, 2022 would receive no severance. I strongly believe Unilever had full intentions to sacrifice our jobs in order to save a vaccinated headcount. Those of us, including myself, who were over 50 and employed than 20 years (which was most of the unvaccinated) were forced unwillingly to be part of the re-org (but not have to pay us severance, while those who were impacted by the reorg were compensated and provided severance). Now, effective October 18, 2022 Unilever has dropped the mandate. Less than one year they put they policy in effect, then they then drop it. Unilever discriminated against me as an employee who was over 50 - less than 1 year from retirement as part of the plan to reduce headcount but did not provide me my severance nor bridge me for retirement.

## Was anyone in a similar situation treated the same, better, or worse thanyou?

Gina McKay - terminated - over 50 - 23 years employed - not vaccinated
Bill Furrier - terminated - over 50 - over 30 years employed - not vaccinated
Margo Mattice - terminated - over 50 - 27 years employed - not vaccinated
Tracey Alibrandi - terminated - over 50 - 26 years employed - not vaccinated
Jean Mager-Johnson - terminated - over 50 - 25 years employed - not vaccinated
Wendy Farinelli - terminated - over 50 - 25 years employed - not vaccinated
Dan Karcz - terminated - over 50 - 23 years employed - not vaccinated
Cindy Baldelli - terminated - over 50 - 28 years employed - not vaccinated

## Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this personwill provide.

Gina McKay - [redacted]
Bill Furrier - [redacted]
Margo Mattice - [redacted]
Tracy Alibrandi - [redacted]

We were all in the same situation. All over 50 and over 20+ years employed. All treated unfairly and age discriminated against.

## Please tell us any other information about your experience?

I was one year away from retirement. It has been devastating and has caused mental anguish to think about how I was terminated for my age and lost all my retirement benefits. The company had even posted my job without my knowledge. Very disappointing in the treatment from a company you gave your life to for 22 years.

## Job Description

Senior Facilities Coordinator (NS6)

**Unilever R&D Trumbull, CT**

**Line Manager: John Bartolone**

Who You Are and What You'll Do

The R&D Contract Coordinator (R&D CC)/Site Administrative Assistant will be responsible for managing all R&D contract re based in Trumbull, CT and Englewood Cliffs, NJ. This individual will report directly to the Trumbull Site Operations / Ecosys To' person for anyone working with new or existing partners and is requesting a CDA, MTA, Fee for Service, Joint Developm newals or other type of legal contract and ensure all requests for these agreements are entered into our electronic contract CC/Site Administrative Assistant will know how to guide employees on the proper use of the CLM system and provide advi standard contract before it is issued for release to any 3rd party. Additionally, when any modifications to the Unilever stanc ceived, the Contract Coordinator will contact and route the contract to one of our retained 3rd party legal firms or an interna changes as to whether it is acceptable or needs to be further negotiated until mutually agreed. Once agreed, the R&D CC w using DocuSign and enter the signed contract into CLM.

The R&D CC/Site Administrative Assistant will additionally support our scientific staff and the Site Operations / Ecosystem providers into our vendor payment system requiring specific legal and tax information gathered from the new provider. The will also ensure that a PO is generated and payments are made in accordance to the contracts. When payments are found R&D CC/Site Administrative Assistant will need to follow up with internal and external contacts to understand how to unloc Specifically:

- Create Sodexo PO's for: Supplies, Maintenance and Repair, Capex projects, Environmental remediation projects
- Create PO's for LAN Associates and for Occupational Nurse
- Utilizing DCIW+ (accounts payable reconciliation approval system) for site and pilot plant:
  Create good receipts in Coupa and relay GR ID in DCIW+
  Invoice reconciliation- investigate discrepancies in unpaid invoices
  Communicate with P2P teams and suppliers for disbursement

- Arrange non-Coupa payments to government agencies like CT Nuclear Regulatory Commission, Radioactive waste re
- PEGA system onboarding new suppliers which are not in Coupa to start in which new suppliers need to provide 1099

This position will be directly responsible for assisting the Operations Director and team in issuing timely site communicatic organizing Site events including set up of Town Halls and assisting the VP Site Leader, Operations Director and R&D Directo cluding generating a visit itinerary and on-site support need to ensure visits are a success.

Responsibilities include but not limited to travel requests, organizing guest / team meetings, managing their calendars, T&E

What You Need to Succeed

- Bachelor's Degree or equivalent with 5+ years of working experience with legal contracts in a corporate setting prefe Confidentiality, Fee for Service and R&D intellectual property. Person should have a working knowledge of key terms to provide sound advice as to what inputs are required to issue a draft contract.
- Familiar with using digital platforms and quickly establishing the contract support network (CLM, Accenture, Global I zation to get the jobs done OTIF.
- Have exceptional follow-through skills to complete tasks/projects end to end
- Requires sound decision making and problem solving with minimal supervision
- Have excellent communication and presentation skills
- Requires the ability to be a credible source to ensure Contracts and Site Administrative activities are managed flawle
- Efficiently handle day-to-day matters that arise and effectively prioritize and anticipate the needs and support of your
- Pro-actively provide solutions for better optimization of site operations

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203-0506
Toll Free Number: (866) 408-8075
Boston Direct Dial: (617) 565-4805
Boston Direct Line: (617) 565-3200
TTY: (617) 565-3204
FAX: (617) 565-3196

Internet: www.eeoc.gov
Email: info@eeoc.gov

August 30, 2022

Maggie Stauber
4 Rouleau Lane
Shelton, CT 06484

Re: EEOC Charge No. 523-2022-02243

Dear Ms. Stauber:

The United States Equal Employment Opportunity Commission (EEOC) has concluded its inquiry into your allegations of discrimination. Under the EEOC charge prioritizing procedures, we focus our resources only on those charges that are most likely to result in findings of violations of the laws we enforce. In accordance with these procedures, the EEOC has evaluated this charge based on the evidence you provided. The evidence fails to indicate that a violation of the laws occurred, and it is not likely that additional investigation will result in our finding of a violation.

According to the charge of employment discrimination you have filed with the EEOC, you alleged that you were denied a reasonable job accommodation for your sincerely held religious belief against a mandatory vaccination policy and subjected to different terms and conditions of employment and terminated by the Respondent for non-compliance in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).

In the absence of an undue hardship, Title VII requires an employer to provide a reasonable job accommodation to an individual with a sincerely held religious belief that would relieve employees the burden of choosing between their jobs and their religious convictions. Undue hardship under Title VII is defined as anything, including costs, that are "more than a deminimis". Courts have found undue hardship were the requested accommodation diminished efficiency in other jobs, infringes on other employee's job rights or benefits, impairs workplace safety [e.g., spread of COVID -19], or cause coworkers to carry the accommodated employee's share of potentially hazardous or burdensome work. Whether the proposed accommodation conflicts with another law will also be considered as an undue hardship. EEOC looks at each charge on a case-by-case basis and while no single factor is dispositive, we have to consider other factors including: the assessment of the public risk posed at a particular time including patient contact, the availability of effective alternative means of infection control, and potentially the number of employees who actually request accommodations.

Based on our analysis on the facts of your case, the Commission do not believe there is more likely than not, a violation.

The Commission is unable to conclude that the information establishes probable violations of statutes. This does not certify that the Respondent is in compliance with statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

Even though you may disagree, it is unlikely that EEOC would find a violation if it invested additional resources. Thus, the EEOC's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within ninety (90) days of receipt of said notice. Otherwise, your right to sue will be lost.

Sincerely,

Feng Kuei An

Feng An, Kenneth, J.D.
Area Office Director

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Boston Area Office**
15 New Dudbury St, Room 475
Boston, MA 02203
(617) 865-3670
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/30/2022

**To:** Mrs. Maggie R. Stauber
4 Rouleau Lane
SHELTON, CT 06484
Charge No: 523-2022-02243

EEOC Representative and email: Anthony Pino
Supervisor
Anthony.Pino@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 523-2022-02243.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
08/30/2022

Timothy Riera
Acting District Director

**Cc:**
Nathaniel Glasser
Epstein Becker Green
1227 25TH ST NW STE 700
Washington, DC 20037

Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 523-2022-02243 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.



EEOC
Boston Area Office
JFK Federal Building, Room 475
15 New Sudbury Street
Boston, MA 02203
OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300
BOSTON MA 020
14 APR 2026 PM 7 L
$0.740
US POSTAGE
August 30, 2022
Maggie Stauber
4 Rouleau Lane
Shelton, CT 06484

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

| | |
|---|---|
| **Maggie Stauber**<br>**COMPLAINANT** | **DECISION ON RECONSIDERATION REQUEST – GRANTED** |

**v.**

**Unilever**
**RESPONDENT**

| | | | |
|---|---|---|---|
| **CHRO Case No.** | **2320137** | **Date Filed:** | **10/26/2022** |
| **EEOC Case No.** | **523-2022-02243** | **Date Filed:** | **10/26/2022** |

## SECTION I. SUMMARY OF ORIGINAL INVESTIGATION

On April 27, 2022, Maggie Stauber ("Complainant") filed a complaint with the federal Equal Employment and Opportunities Commission ("the EEOC") against Unilever ("Respondent") alleging that she was discriminated against in her employment on the basis of her religion when the Respondent terminated her for refusing to receive the COVID-19 vaccine. On August 30, 2022, the EEOC dismissed the Complainant's allegations on the grounds that there was insufficient evidence to demonstrate that it was more likely than not that a violation of Title VII of the Civil Rights Act of 1964 occurred.

On October 26, 2022, the Complainant filed with the Commission on Human Rights and Opportunities ("the Commission") an additional complaint to conduct a Substantial Weight Review of the EEOC's determination.[1] On November 28, 2022, the Commission served the complaint and notified the Complainant of her right to request a Substantial Weight Review of the EEOC's decision, and on December 16, 2022, the Complainant notified the Commission of her request for a substantial weight review.[2] Additionally, on February 1, 2023, the Complainant filed an amended complaint clarifying the issues and including an additional claim of age discrimination.

A Commission investigator conducted a substantial weight review of the EEOC's decision, and on September 12, 2024, issued a draft notice of "No Reasonable Cause." On September 26, 2024, the Complainant submitted comments regarding the draft finding, including questions concerning the lack of a hearing or mediation prior to issuance

[1]It is unclear why this was done. The Workshare Agreement with the EEOC sets forth that complaints filed with the EEOC are concurrently filed with the Commission such that the original complaint was timely filed with the Commission. The complaint filed on October 26, 2022, was identical to that filed with the EEOC and did not contain any new allegations, facts, or evidence.

[2]The notice indicated that a request for substantial weight review must be received within fifteen days of the date the notice was sent. That deadline, therefore, expired on December 13, 2022. Despite this, the Commission accepted the Complainant's request and processed it accordingly. Given that the fifteen-day deadline is contained only within the Workshare Agreement and not a jurisdictional bar for review, the Commission's processing is not in error.

of the draft decision, as well as questions concerning the procedural ambiguity in light of this matter being processed first at the EEOC with later allegations being added to the complaint.

On March 6, 2025, the Commission issued a final notice of "No Reasonable Cause," concluding that the allegations of age discrimination were properly before the EEOC when it issued its original decision and that the substantial weight review examined both the age and religion discrimination allegations. The Commission concluded that the substantial weight of the evidence supported the EEOC's determination, and it then dismissed the matter. In that final decision, the Commission informed the Complainant of her right to request reconsideration or appeal the decision.

**SECTION II. <u>SUMMARY OF RECONSIDERATION REQUEST</u>**

On March 21, 2025, the Complainant sent an email to the Commission requesting reconsideration of the Commission's substantial weight review. Accordingly, the Commission concludes that the Complainant properly filed a Request for Consideration in accordance with Conn. Gen. Stat. § 46a-83, which requires that reconsideration requests be received within fifteen (15) days from the date of dismissal.[3]

Under Regs. Conn. State Agencies § 46a-54-62a(b), "[a]ny request for reconsideration shall state specifically the reasons upon which reconsideration is requested." Complainant requested that the Commission reconsider the dismissal of the Complaint for the following summarized reasons:

1. She was denied the opportunity for an investigation and/or hearing regarding her claims.

2. The Respondent had a "premeditated conclusion" regarding every claim for a vaccine exemption that was unsubstantiated and unjustified.

3. Her peers also began discriminating against her, which implies that Respondents revealed to other employees the Complainant's personal information and request for a vaccine exemption.

4. The Respondent had already been pre-planning a workforce reduction, and utilized the list of those who requested vaccine exemptions as the source for such layoffs.

5. She has still been denied unemployment benefits without a hearing.

[3]The Commission sent its final notice via email at 6:54 pm on March 6, 2025—presumably when the Commission's offices were closed. The Regulations do not address the timeline for future deadlines premised on the time of service of a Commission notice after hours. Regardless, the date for filing from March 6th would have fallen on a weekend when the Commission's offices were closed, and under Regs. Conn. State Agencies § 46a-54-20a the date for filing would fall to the next business day: March 24, 2025. Accordingly, the Commission accepts the request for reconsideration as timely filed prior to March 24th.

6. The Complainant was unable to receive the vaccine regardless because she later developed an autoimmune disease and her "doctor . . . informed [her] that if [she] had taken the vaccine, [she] may have suffered further complications."

## SECTION III. ANALYSIS

Regs. Conn. State Agencies § 46a-54-62a(e) sets forth that the executive director may reconsider the dismissal of a complaint if "(1) An error of fact or law should be corrected; (2) New evidence has been discovered which materially affects the merits of the case and which, for good reasons, was not presented during the investigation; or (3) Other good cause for reconsideration has been shown."

Before examining the merits of the request, it is necessary to examine the four administrative concerns that ultimately warrant reconsideration. First, the regional office required the Complainant to file a *new* complaint to initiate the substantial weight review, which is unnecessary when the EEOC has dismissed a matter. Instead, the regional office should have simply notified the Complainant of her right to request substantial weight review within fifteen days or the matter would be administratively closed pursuant to the Workshare Agreement. This requirement of a new complaint only confused the Complainant and clouded the issue to be determined: namely, whether the EEOC's decision was supported by the substantial weight of the evidence.

Second, although the Commission's substantial weight review was addressed as a finding of "no reasonable cause," under Conn. Gen. Stat. 46a-83(g) a finding of no reasonable cause is issued only if there has been an investigation into the underlying merits of the complaint. No such investigation occurred—either at the EEOC or at the Commission—such that there can be no such finding. Instead, the substantial weight review should have been conducted on the EEOC's conclusion that it would not process the matter further because it was not more likely than not that a violation occurred.[4]

Third, the Commission's substantial weight review finding does not identify any evidence in the file demonstrating *why* there is substantial evidence to support the EEOC's determination. Although the standards for conducting a substantial weight review at this stage are unclear; (*see* note 4, *supra*); the EEOC's determination was akin to a Commission finding of "no reasonable possibility that investigating the complaint will result in a finding of reasonable cause" under Conn. Gen. Stat. § 46a-83(c), for which the Commission *does* have a standard for such a finding: there must be substantial evidence in the record sufficient to demonstrate that any further investigation would not lead to a "bona fide belief that the material issues of fact are such that a person of ordinary caution,

---

[4]Note that the standards for conducting substantial weight reviews do not address reviewing a finding that it is not more likely than not that discriminatory practice occurred. Instead, substantial weight reviews are addressed to matters where there is documentary evidence demonstrating that further investigation would be impractical: e.g., the respondent has filed for bankruptcy or is no longer in business, the complainant is no longer cooperating, or there is a jurisdictional bar to processing further. In other matters where there have been investigatory steps taken, substantial weight reviews address the witnesses interviewed, the evidence obtained, and the investigatory procedures taken. Because there was nothing preventing the matter from proceeding and no investigation occurred here, these standards do not apply.

prudence and judgment could believe the facts alleged in the complaint." *See*, *e.g.*, *Blackwell v. Danbury Hosp. and Business Systems, Inc.*, No. 324612, 1997 WL 187182, at *5–*7 (Conn. Super. Ct. Apr. 8, 1997). Given this standard, the Commission's final finding is entirely devoid of any identification of facts or evidence demonstrating the lack of reasonable cause, if it existed.

Fourth, and perhaps most importantly, on March 28, 2023, the Commission conducted its Case Assessment Review and *retained the matter for further processing*. It clearly concluded that there *was* some type of evidence permitting the matter to proceed further, and a mandatory mediation and investigation should have been forthcoming. The very fact that the Commission retained the matter directly conflicts with the EEOC's assessment of the matter and cannot be reconciled by the investigator's final findings.[5]

Looking at the merits of the substantial weight review reveals further concerns. Namely, on February 1, 2023, the Complainant amended her complaint to include an additional protected class basis for discrimination—age. Despite the investigator's claim that the EEOC had examined the claim of age discrimination, the record clearly does not support this. The original complaint with the EEOC only addressed religious discrimination without any reference to age. The EEOC's final finding only addressed religious discrimination and the requirements under Title VII, undue hardships, and the relation with vaccinations; not age. Indeed, the Respondent's answer before the EEOC only addressed the claim of religious discrimination without any mention of age. The *only* mention of age was in the Complainant's nine-page single-spaced rebuttal when she said that "[m]ost of us [who requested vaccine exemptions] are also over 50 and female" and "I believe those of us, who fell in the group of over age 50 and 20+ years of service, were easy target to be part of the restructuring. . . ."

That is not to say, however, that the EEOC's original determination concerning the claim of religious discrimination is not supported by the substantial weight of the evidence. The record does not reveal any evidence demonstrating what religious affiliation or beliefs the Complainant held that would have entitled her to a vaccine exemption, and the record demonstrated a significant undue burden by permitting the Complainant to have a vaccine exemption for non-medical reasons. Namely, the Respondent had substantial in-person operations requiring personnel to be in close proximity to each other, and the Complainant would necessarily be a risk to others that would not be able to be vaccinated for other medically significant reasons. There was substantial weight to support the EEOC's conclusion not to further process the Complainant's claim of religious discrimination, and the Complainant has not presented any new evidence or other error necessitating reconsideration if the review was limited to just that claim.

---

[5]Although not necessarily an error requiring reconsideration, it took almost a year for the Commission to issue a draft decision on the substantial weight review when the EEOC's determination was without any type of investigation and premised solely on the pleadings. It is unclear why this decision took so long or required such a delay. Then, the Commission required another six months to issue a final decision after reviewing the Complainant's comments. Again, it is unclear what prompted this significant delay.

Although the Commission could have found substantial weight to support the EEOC's decision not to process further the claim of religious discrimination, the Complainant filed a valid complaint alleging age discrimination that the EEOC never investigated, that the Commission retained after case assessment review, and for which the Commission never conducted an investigation or a issued final finding. A procedural error occurred in this matter that necessitates reconsideration and further investigation into both claims of discrimination.[6,7,8]

## SECTION IV. DETERMINATION

The request for reconsideration is **granted.**

May 9, 2025
DATE

*Gregory A. Jones*
Gregory A. Jones
Human Rights Attorney

[6]Although the Respondent in its answer to the amended complaint alleges that the claim of age discrimination is untimely, this ignores Regs. Conn. State Agencies § 46a-54-38a, which permits later amendments to include "additional protected class status." *Wright v. Teamsters Local 559*, 123 Conn. App. 1, 8–9 (2010). Indeed, our Appellate Court in *Wright* approved of an amendment under that regulation that alleged age discrimination that was not alleged in the original complaint. *Id.* Accordingly, the claim of age discrimination relates back to the filing of the original complaint on April 27, 2022, and is timely filed.

[7]The Respondent in its answer to the original complaint before the EEOC alleged that the Complainant *resigned* rather than was *terminated*. Although this may affect the validity of the Complainant's allegations concerning age discrimination, it is unclear that she actually did resign. Email correspondence reveals that although she original submitted her resignation, she also later withdrew that resignation and indicated that she would proceed through a "transition" period along with other unvaccinated individuals. This ambiguity requires further investigation.

[8]Although the claim of religious discrimination could have been dismissed and the EEOC's decision upheld, the retention of the matter at CAR negates this conclusion, and, further, the Commission does not separate allegations conjointly filed. The claim of religious discrimination before the Commission, therefore, was retained by the Commission and must be investigated.

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

MAGGIE R. STAUBER
COMPLAINANT                                        CHRO No. 2320137

v.                                        .

UNILEVER
RESPONDENT

**RELEASE OF JURISDICTION**

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business, or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action must be served on the Commission by email at ROJ@ct.gov or, if you do not have access to email at Commission on Human Rights and Opportunities, ATTN: Legal Division, 450 Columbus Boulevard, Suite 2, Hartford, CT 06103, at the same time all other parties are served. **The Commission must be served because it has a right to intervene in any action based on a release of jurisdiction pursuant to Conn. Gen. Stat. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release. Please note that a Right to Sue Letter must be requested directly from the Equal Employment Opportunity Commission (EEOC) in order to file federal claims in federal court.

**DATE:** April 22, 2026

Tanya A. Hughes
Tanya A. Hughes, Executive Director

Service:
Complainant: Maggie R. Stauber, Esq. (Email: maggiestauber@msn.com)
Complainant's Attorney: n/a
Respondent's Attorney: Elizabeth Torkelsen, Esq. (Email – etorkelsen@ebglaw.com)

.